### AUGUSTUS DEVALL v. THE SUCCESSION OF GEO. W. WATTERSTON.

A suit of a Succession being a Probate proceeding, cannot be submitted to a jury.
A party will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding.
A party cannot shift his position at will to a contradictory one, in relation to the subject-matter of litigation, in order to frustrate and defeat the action of the law upon it.

APPEAL from the Sixth Judicial District of the Parish of Livingston, *Martin, J. Duncan N. Hennen*, for defendant.

*Alfred Hennen, for plaintiff.*—The plaintiff alleges that a partnership existed between the late G. W. Watterston and himself, and prays for a

liquidation thereof, and the payment of the balance, $4,300, or such other sum as may be found due, with general relief.

The defendant made a general denial, and prayed for a trial by jury, which was denied him, whereon he took a bill of exceptions. Art. 1036 of the C. P. settles this : "All causes tried before a Court of Probate shall be decided without the intervention of a jury, even if the parties wish one."

The suit was against a succession, and consequently before a Court of Probate. C. P. Arts. 924, § 13, 983. Next, the defendant filed three peremptory exceptions. The first is "that the agreement set forth in the petition does not establish the contract of partnership, but the contract of hire."

The most technical special pleading used in Westminster Hall, since the days of Lord Coke, does not require a set form of words to denote a partnership. It is termed a contract of partnership in the petition, and that is sufficient under the pleadings required by the C. P. Arts. 171, 172, § 3.

As to the second and third exceptions, it is sufficient to answer that the plaintiff makes no claim for a salary on account of services rendered, and therefore the prescription of three years cannot apply, nor res judicata be invoked against it from a former suit between the parties.

In following downwards these technical difficulties, the Court will find, at page 19, a second bill of exceptions, made, as it states, "before the evidence of plaintiff was introduced," to the introduction of any evidence by the plaintiff to establish his allegations. This is rather a novel method of objecting to evidence, and amounts to this, if anything: the plaintiff shall not be admitted to prove his allegations ; but the defendant went further and introduced evidence to show that the plaintiff should be precluded from giving in any evidence to support his demand. The Court, however, overruled the objection and permitted the plaintiff to proceed. When the plaintiff offered his evidence the defendant changed his grounds of objection, and stated "that the cause of action in said suit, No. 540, was not the same as the present;" and this objection of the defendant was "sustained by the Court," and the evidence of plaintiff was rejected. How the plaintiff agrees fully with the counsel of the defendant " that the cause of action in the said suit No. 540 is not the same as the present," and as this is a judicial confession contained in the pleadings and proceedings, he insists upon holding the defendant to this admission, which he cannot here deny, revoke or contradict, and the contradictory ground assumed before must be considered as abandoned by the last averment, containing the result of his sober reflection and final judicial interpretation.

If these variations in the defendant's defence bring us to his own conclusion, and he is to be judged ex ore suo, there can be no difficulty in rendering a judgment against him. He cannot plead hot and cold, fast and loose; but must be taken at his own last words, and by them the

plaintiff is willing to be governed.　The two suits are not inconsistent nor contradictory.

Two different agreements are distinctly stated to have been made between the parties, and if not irreconcilable must stand.　By the law of partnership, one partner may claim for services, even rendered to the partnership for the common profit, when those services were not expressly included in his duties as partner.　Two contracts may co-exist and be valid.　In construing the allegations of the two suits full effect must be given to each, and reconciled, as in two apparently conflicting decisions of a Court, or two clauses or parts in a statute.　No contradiction is to be admitted unless unavoidable.　The contradiction and inconsistency must be clearly made out by the defendant, who wishes to make them a bar in this suit.　It is not enough that he makes them probable.　At best, the defendant takes only technical grounds of defence.　The Court will not favor them to the prejudice of the merits of the case, and will not sacrifice the latter to sustain the others.　See Story on Partnership, ? 185, 186, and the elementary authors and cases quoted by him, but especially the long extract from John Voet, on the Pandects, lib. 17, tit. 2, ? 19 (first published in 1697), where the legal positions now made are fully sustained.

This latter author goes so far as to state that, under some circumstances, a salary may be claimed, over and above a share of the profits, for a partner's particular services, without an express agreement for it, on the same argument and authorities detailed in the preceding title (Mandati), and which are not quoted by Story.　In this last contract (Mandati), which is essentially gratuitous, a salary is allowed for various services, in opposition to that very essence which distinguishes it from other contracts.　On the merits of this case no doubt can exist.　See testimony of S. McConnell ; Henburger's answer to fifth interrogatory, as to the amount of lumber.　All the witnesses concur in proof of the partnership.　The suggestion, therefore, of the defendant as to their credibility is· unfounded, while they testify as to the declarations of a dead man.

It may be usage that a salary or free gift belongs more really, perhaps, to one in partnership, certainly, than in mandato, provided the parts of the profit coming to each are a sufficient reward for his labor.　Nevertheless, nothing prevents one partner who manages and promotes, perhaps chiefly and entirely, the business of the partnership, when he is not bound by the contract to perform that work more than the others, from being from the beginning assigned some salary; or, afterwards, it may be decided by the arbitration of a good man, and this rather by an uncommon rule of the magistrate, the (reason or) argument applying of those things which are said concerning salary in mandato, rather than an action tried pro socio.　And that this is agreeable to modern usage, is clear from the answers of the lawyers and merchants among the responsa juris consultorum Hollandiæ.　Voet ad Pand. lib. 17, tit. 2, ? 19.

ILSLEY, J.　This is a suit instituted by the plaintiff against the succession of the late George W. Watterston, claiming the settlement of the

partnership which, he alleges, formerly existed between him and the late George W. Watterston; and the plaintiff prays in his petition that the executor be ordered to render an account of the said partnership affairs; that the said partnership be settled, and that petitioner have judgment against the said executor for the sum of four thousand three hundred dollars, or for such amount as the plaintiff may be found entitled to, on a full and fair settlement of said partnership, with interest and costs.

The plaintiff represents in his petition, that in the summer of 1856 he entered into an agreement with Geo. W. Watterston, by which agreement petitioner was to give his personal services in the management of the steam saw-mill belonging to the said Watterston, on the river Amite, in the parish of Livingston, the said Watterston to furnish the necessary hands and supplies for the running of said mill, furnishing timber, etc., in consideration of which the plaintiff was to receive one-half of the nett profits, after deducting the wages of the hands, costs of supplies for the hands, repairs to mill, and cost of timber, etc. He further represents, that in pursuance of said agreement, and in accordance therewith, he took charge of the mill in the beginning of September, 1856, and diligently and faithfully devoted his attention to the discharge of his duties, as agreed on, to the entire satisfaction of the said Watterston, until the latter part of the month of October, 1857. He then proceeds to show how much lumber was sawed, and that the said lumber brought some nine thousand dollars, which were received by Watterston.

He avers that there was no settlement of the partnership up to the time of Watterston's death, and that there is due to him on settlement a large amount, four thousand dollars and upwards, he having received about two hundred dollars during the lifetime of the said Watterston.

The defence is a general denial, and the following peremptory exceptions of law:

1. The agreement set forth in the petition does not establish the contract of partnership, but the contract of hire, locatio.

2. If this action under the prayer for general relief be considered as a claim for hire or salary, then defendant pleads res judicata, the judgment in this (the District Court) in the suit No. 540, between the same parties, for that cause of action; and finally,

3. Prescription: the last named action for wages is prescribed by three years.

These exceptions were overruled in the lower Court, which rendered a judgment on the merits, in favor of the plaintiff, and against the defendant, for the sum of fourteen hundred and twenty-one dollars and fifty cents, being amount due him, as partner of Watterston, in the Clio saw-mill; and from this judgment the succession has appealed.

As the exceptions urged by the defendant would, if maintained, have the effect of disposing of the plaintiff's action in a very summary manner. We will proceed to examine them.

1 and 2. The first and second exceptions may be conjoined and considered together.

Previous to the institution of the present action, the plaintiff had, in the suit No. 540, in the same Court, instituted an action against the succession of G. W. Watterston, claiming from it the sum of one thousand six hundred dollars, with interest at the rate of five per cent. per annum from the 8th day of January, 1858, subject to a credit of one hundred and fifty dollars paid on or about the 15th day of November, 1856; and in his petition the plaintiff avers that, according to an agreement entered into with the said George W. Watterston, he took charge of, and assumed the management and control of the steam saw-mill belonging to the deceased Watterston; that he, the plaintiff, had the general superintendence thereof, and for which he was to receive, as a compensation, the sum of one hundred dollars per month from the 8th day of September, 1856, to the 8th day of January, 1858, making sixteen months, in which he was thus employed; that during that time he received the amount of the credit above expressed, leaving a balance now due him of one thousand four hundred and fifty dollars, as will fully appear by reference to the annexed account made part of his petition; and he finally avers that the duties and labor performed by him were worth one hundred dollars per month.

We are relieved from the necessity of examining the question whether the cause of action in the suit No. 540 is identical with that of the present one; because the defendant has, in this suit, admitted judicially the fact that they are not the same, and, by that admission, excluded certain testimony offered by the plaintiff. Considering that this judicial admission referred to the cause of action, as alleged in the two petitions, still it is fatal to the exception rei adjudicatæ, and that exception was properly overruled.

The defendant, in his answer, prayed for a trial by jury; which prayer was properly rejected, as the suit was against a succession, and being a probate proceeding, could not be submitted to a jury. See 1036 C. P.; 924. § 13, ib.; 983 ib.

When the case was on trial on the merits the plaintiff offered evidence to prove the partnership between him and the deceased, and also the other allegations predicated on that alleged relation of the parties; and to the introduction of all such evidence the defendant objected, on the ground that the plaintiff had made a judicial admission in the petition of suit No. 540, between the same parties, that he was employed by the deceased during the same period as stated in the petition of this suit, at the same saw-mill as the superintendent, at wages of one hundred dollars per month; and that the evidence offered went to contradict his judicial admission, by undertaking to show that the plaintiff was with Watterston, as partner, and not on wages as superintendent; and the defendant thereupon introduced the petition in said suit No. 540; and which objection, made by the defendant, being overruled by the Court,

he tendered his bill of exceptions, which was signed by the Court. We think the Court below erred in permitting the introduction of any evidence whatever to contradict the solemn admission made by the plaintiff in his petition in the first suit, that the contract between him and Watterston, evidently the only one, was one of hire.

It was held in *Gnoley* v. *Conner*, 9 A. 416, that a party will not be permitted to deny what he has solemnly acknowledged as a judicial proceeding; and in *Denton* v. *Erwin*, 5 A. 18, the Court said in addition to this: that a party cannot shift his position at will to a contradictory one in relation to the subject matter of litigation, in order to frustrate and defeat the action of the law upon it.

The *alleged* cause of action in the two suits is not an identical one; but the judicial admission made by the plaintiff in the first suit, that the contract sued on was one of hire, estops the plaintiff from proving that that contract was one of an entirely different nature. It is the presumptio juris et de jure, against which the law admits no proof whatever; and as it is the admission in the *petition* in suit No. 540, which precludes the admission of any contradictory proof, it is needless to determine whether the Court erred in excluding the parol testimony in said suit, offered by the plaintiff; and to that end to examine his bill of exceptions.

The judgment of the lower Court must be reversed; and as nothing could be gained by a judgment of nonsuit, our judgment must be for the defendant.

It is ordered, adjudged and decreed, that the judgment of the lower Court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that judgment be and it is hereby rendered against plaintiff and in favor of the defendant; and it is further ordered, that the plaintiff and appellee pay the costs in both Courts.