## No. 5719.

· GEORGE S. LACEY VS. RUFUS WAPLES AND CITY OF NEW ORLEANS.

By section thirty-one of the act No. 7 of the extra session of 1870, which constituted the new charter of the city of New Orleans, it is declared that the salary of the City Attorney shall be fixed by the Common Council at a sum not to exceed six thousand dollars per annum, and that he shall receive no extra compensation, nor shall any other attorney be appointed to assist him, unless by a vote of a majority of the Council.

The proceeding to homologate the third drainage assessment, if instituted and conducted by plaintiff, was but the discharge of a duty devolving on him as City Attorney, because the law creating the office required him to represent the corporation "in all proceedings and actions to which it was party." There is nothing in the record to show that "an extra fee was allowed by a vote of a majority of the members of the Council," or indeed that any vote was ever taken in regard to it.

Plaintiff takes a fallacious position when contending that the act of 1861 in regard to the drainage districts, requiring, when the tableau of assessment is homologated, that the delinquent taxpayers shall be condemned in the additional sum of ten per cent for counsel fees and costs, entitles him to the remuneration claimed, notwithstanding the prohibitive feature of the city charter, because, as he alleges, the former is a special law, and is not repealed by the latter, which is a general law. The error lies in assuming that the charter of the city is a general law. Both acts are special statutes, and the latter is the law applicable to the claim for extra compensation set up by the plaintiff.

Plaintiff is estopped from denying that the ownership of the judgment in question is in the city of New Orleans by the judicial admissions, in the petition for the homologation of the tableau of assessment—which petition he filed, as he says, through his subordinate, Rufus Waples, the Assistant City Attorney. In that petition on behalf of the city of New Orleans to homologate the drainage assessment, it is alleged that the city was subrogated by law to the rights, powers, and facilities possessed by the commissioners of the several drainage districts, and judgment is prayed in favor of the petitioner in the capacity aforesaid.

An attorney-at-law, in the face of his own judicial admissions in a suit which he brought for his client, can not be permitted, when he comes to sue to be decreed a part owner of the judgment thus obtained, to allege that his former client had no interest in the suit, and therefore has no interest in contesting with him in regard to the title or ownership of said judgment.

The exigencies of plaintiff's case have forced him to the position of maintaining that New Orleans is really not the owner of the judgment in controversy, and

NEW ORLEANS, FEBRUARY, 1876. 159.

Lacey vs. Waples and City of New Orleans.

therefore has no right to set up legal defenses against him; but, should this be true, he has no cause of action against New Orleans, and had no right to bring her into court.

New Orleans is the real beneficiary in the drainage laws. She is the owner of the judgment against the delinquent taxpayers, and is the person entitled to enforce its collection. A party who has the exclusive right to merge a claim into a judgment, and after judgment to make the money on execution, must be regarded in law as the owner of said judgment.

The Mississippi and Mexican Gulf Ship Canal Company have no direct interest in the judgment the title to which is the subject of this controversy. If every cent due in consequence of said judgment should at once be collected, or at once be lost, the Mississippi and Mexican Gulf Ship Canal Company would neither be enriched nor impoverished.

The Mississippi and Mexican Gulf Ship Canal Company have, however, an indirect interest in the judgment. They are the contractors to do the work of draining the city under the supervision of the city surveyors. They have an interest in the solvency of the party for whom they are employed to work, and as the work progresses from month to month they may require payment out of the funds set apart for the purpose.

The fact that the State made the contract in behalf of the city affects the interest of New Orleans in the beneficial results contemplated by said act no more than if the contract had been made by the city herself, and the fact that, under this contract, New Orleans is required to apply the proceeds of the judgment, when collected, to the discharge of the debt for keeping up the drainage of the city, does not impair her ownership of the judgment against the delinquents any more than the obligation incurred by the city to apply any and every other resource to the purpose for which it was appropriated.

The above-mentioned prohibitive clause of the charter of the city of New Orleans defeats also the pretensions of Waples, the intervenor. He was not employed by a vote of a majority of the City Council, and therefore can not compel the city to allow him a fee in the case.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J. Frank N. Butler*, for plaintiff and appellant. *Rufus Waples, in propria persona*, defendant and appellee. *Cotton & Levy* and *Fernandez & Kruttschnitt*, on behalf of *Alfred Phillips*, of counsel for the city of New Orleans, defendant and appellant.

WYLY, J. On the seventeenth of March, 1872, the city of New Orleans, by Rufus Waples, Assistant City Attorney, instituted proceedings in the Eighth District Court to homologate the tableau of assessment for the Third Drainage District, pursuant to the acts of 1858, 1861, and 1871 in regard to the drainage of New Orleans.

The petition alleged that the city of New Orleans was "subrogated by law to the rights, powers, and facilities possessed by the commissioners of the several drainage districts;" that a copy of the plan describing the several pieces of property and a copy of the tableau of assessment were duly filed on the second of March, 1872, in the office of the Recorder of Mortgages for the parish of Orleans, and that proper notices to the delinquent taxpayers had been duly published in the official journal as required by law. Upon these allegations the petitioner prayed for judgment homologating the assessment and subjecting the property described therein "to a first-mortgage lien and privilege in favor of your petitioner in the capacity aforesaid, for such amounts as may be assessed

160        SUPREME COURT OF LOUISIANA,

Lacey vs. Waples and City of New Orleans.

on it for its portion of the whole costs of drainage of said section, in accordance with the provisions of the statute by which said privilege lien and mortgage were created."

No opposition was filed.

On the eighth of November, 1872, on motion of Rufus Waples, the tableau of assessment was homologated and judgment was rendered "against the property described as assessed in said roll, and also against the owner or owners of each property respectively, with *ten per centum* additional to the amount assessed, for counsel fees and costs as provided by law."    *    *    *

The total amount of this judgment was $627,598 94, and also the additional sum of ten per cent thereon.

George S. Lacey, the City Attorney at the time the above judgment was rendered, now sues Rufus Waples, the Assistant City Attorney, and they cit of New Orleans, to be decreed the owner of this ten per cent on $627,598 94, that is, to be declared the owner of this part of said judgment; he also prays judgment against the city for whatever part of said ten per centum it has heretofore collected, and that the city be decreed to pay over to him the balance thereof as fast as collected.

Rufus Waples and the city of New Orleans filed separate answers. And Waples subsequently intervened and claimed that he was the attorney of record and was entitled, if any one, to the ten per centum for counsel fees and costs; that as Lacey rendered no services in causing the homologation of the tableau of assessment, he is entitled to no compensation on account thereof; that he, the intervenor, was Assistant City Attorney when the petition was filed, but he ceased to hold said office when the judgment of homologation was subsequently entered up on his motion, and that he abandons to the city three-fourths of the ten per cent counsel fees stated in the judgment, and only claims one-fourth thereof, the same being a reasonable and fair compensation for his professional services rendered in said case subsequent to the severance of his connection with the city as Assistant City Attorney.

The court gave judgment rejecting the demand of plaintiff, and gave the intervenor judgment decreeing him to be the owner of one-fourth of the ten per cent counsel fees stated in said judgment of homologation.

From this judgment, plaintiff, George S. Lacey, and the city of New Orleans have appealed.

There are several reasons which, in our judgment, are conclusive against the pretensions of plaintiff—

First—Assuming he performed the service of causing the homologation of the tableau of assessment, which was opposed by no one, we think, so far from being entitled to this large fee, Lacey, the City Attor-

# NEW ORLEANS, FEBRUARY, 1876.    161

Lacey vs. Waples and City of New Orleans.

ney, was prohibited from receiving any compensation whatever by section thirty-one of act No. 7 of the extra session of 1870, being the new charter of the city, which provides "that it shall be the duty of the Council, at its first regular meeting after its induction into office, or as soon thereafter as practicable, to elect a secretary. * * * Also a City Attorney, learned in the law, *who shall be the legal adviser of the corporation in all matters in which legal advice may be necessary, and shall represent the corporation in all judicial proceedings and actions to which it may be a party or in which it may have an interest,* and shall in all cases, when required by the Mayor or any Administrator of department, furnish a written opinion of the legality or constitutionality of any law or ordinance to be submitted to or pending before the Council, or as to any questions involved in the discharge of their respective duties. He shall hold his office for a term of two years, unless sooner removed as provided for in this act, *and shall receive a salary, to be fixed by the Common Council, not to exceed six thousand dollars per annum; he shall be allowed no extra fee or compensation,* nor shall any other attorney be appointed to assist him, unless by a vote of a majority of the members of the Council, and shall be empowered to employ one or more clerks as the Council may deem necessary and allow."

The meaning of this section could hardly be made plainer than it is set forth in the language employed by the General Assembly. It defines the duties of the City Attorney, not only in regard to the advice he shall give in all matters relating to the corporation or which concern the Mayor and Administrators, but in precise terms it declares that the City Attorney "shall represent the corporation in all judicial proceedings and actions to which it may be a party or in which it may have an interest." * * * And it also declares that his salary shall be fixed by the Common Council at a sum "not to exceed six thousand dollars· he shall be allowed no extra fee or compensation, nor shall any other attorney be appointed to assist him, unless by a vote of a majority of the Council." * * *

The proceeding to homologate the third drainage assessment, if instituted and conducted by plaintiff, was but a discharge of a duty devolving on him as City Attorney, because the law creating the office required him to represent the corporation in all "proceedings and actions to which it was a party." And for the discharge of this and other duties his compensation was limited to a salary of six thousand dollars, and he was prohibited from receiving any extra fee or compensation, "unless by a vote of a majority of the members of the Council."

Has the plaintiff been allowed an extra fee for homologating the tableau of assessment of the Third Drainage District? There is nothing in the record to show that such a fee was allowed "by a vote of a majority

of the members of the Council," or, indeed, that any vote was ever taken in regard to it. Plaintiff, however, contends that when the Council assigned him to the duty of attending to the drainage case it impliedly consented that he should have the ten per cent allowed by the act of 1861 for counsel fees and costs against delinquent taxpayers.

A sufficient answer to this is that if plaintiff attended to the suit he merely performed one of his duties specified in section 31 of the charter, and for which with other duties that section limited his compensation to a salary not to exceed six thousand dollars; and as it prohibited extra compensation without a vote of a majority of the members, the Council could give no implied consent nor do anything to increase the compensation except in the manner required by said section. Plaintiff also contends that the act of 1861 in regard to the drainage districts, requiring, when the tableau of assessment is homologated that the delinquent taxpayer shall be condemned in the additional sum of ten per cent for counsel fees and costs, entitles him to this remuneration, notwithstanding the prohibitive feature of the city charter, because the former is a special law and is not repealed by the latter, which is a general law. The fallacy in this position lies in assuming that the charter of the city is a general law. Both acts are special statutes, one in regard to the drainage districts, and section thirty-one of the other in regard to the office of City Attorney. They have different objects; and the latter is the law applicable to the claim for extra compensation set up by plaintiff, and must control in determining his rights in relation thereto.

Another argument which the plaintiff makes in support of his demand to be decreed a part owner of the judgment which the city of New Orleans obtained against the delinquent taxpayers, is the assertion that the city has no interest in said judgment or the ten per centum attorney's fees and costs recovered therein, because by act No. 30 of the acts of 1871 the city of New Orleans occupies only the position of a fiduciary, that the real beneficiary is the Mississippi and Mexican Gulf Ship Canal Company, that the city "acquired nothing and became the possessor of nothing" under said statute, and is without interest to set up abstract questions of law to defeat plaintiff's demand. What does plaintiff sue for? He brings a suit in the nature of a petitory action to be decreed the part owner of an incorporeal thing, a judgment which New Orleans recovered against various delinquent taxpayers when homologating the drainage assessment of the Third Drainage District. Instead of being satisfied to recover upon the strength of his own title, plaintiff proposes to oust the defendant, the city of New Orleans, of part of the judgment which she recovered on the alleged weakness of the title which she holds.

But if it be true that the Mississippi and Mexican Gulf Ship Canal

NEW ORLEANS, FEBRUARY, 1876. 163

Lacey vs. Waples and City of New Orleans.

Company are the real beneficiaries of the drainage laws, the real owners of the judgment in question (the title of which is nominally in New Orleans), why did not plaintiff cause them to be made parties before putting at issue the title of said judgment or demanding that the adjudication be made in relation to the title or the ownership of said judgment or any part thereof? How can this court adjudicate upon the title of the judgment which New Orleans recovered in homologating the drainage assessment of the Third Drainage District, or any part thereof, when, as plaintiff claims, the real owners of said judgment have not been sued and are not before the court?

But plaintiff is estopped from denying that the ownership of the judgment in question is in New Orleans by the judicial admissions in the petition for the homologation of the tableau of assessment, which petition he claims that he filed, through his subordinate, Rufus Waples, the Assistant City Attorney. In that petition which Waples, the Assistant City Attorney, filed in behalf of New Orleans to homologate the drainage assessment, it is alleged that the city was "*subrogated by law to the rights, powers, and facilities possessed by the commissioners of the several drainage districts;*" and judgment is prayed "*in favor of your petitioner in the capacity aforesaid.*"

Will an attorney-at-law, in the face of his own judicial admissions in a suit which he brought for a client, be permitted, when he comes to sue to be decreed a part owner of the judgment thus obtained, to allege that his former client had no interest in the suit and judgment, and therefore has no interest in contesting with him in regard to the title or ownership of said judgment? that by a statute in force prior to said suit and judgment his client had no title to the claim set up in said suit; indeed, never was the owner of the judgment; and therefore the said client has no right to resist the demand of himself to be decreed part owner of said judgment?

It is a rule of general application that a defendant in court will be required to do what he ought to have done out of court. The city of New Orleans has been made a defendant and called by plaintiff into this litigation to do what? To transfer to plaintiff a part of the judgment homologating the drainage assessment. But the exigencies of plaintiff's case force him to take the position that New Orleans is really not the owner of the judgment in controversy, and therefore has no right to set up legal defenses.

Then, what cause of action has he against New Orleans, and why was she brought into court? But it seems to us New Orleans is the real beneficiary in the drainage laws, is the owner of the judgment, and is the person entitled to enforce its collection. A party who has the exclusive right to merge a claim into a judgment, and after judgment to make the

money on execution, must be regarded in law as the owner of said judgment.

Under the drainage statutes New Orleans had the undoubted right to merge into judgment every claim against delinquent drainage taxpayers, and the right to enforce the collection thereof. The city is the beneficiary; her territorial possessions are to be drained and protected from overflows, and consequently the lots and squares within her limits are made more valuable, and the health of her inhabitants improved.

Now, what is the interest of the Mississippi and Mexican Gulf Ship Canal Company in the judgment, the title of which is the subject of this controversy?

They are not the owners of the judgment. If every one of the delinquent taxpayers condemned in said judgment should become insolvent, the loss would not fall upon said company. If every cent due in said judgment should at once be collected, or at once be lost, the Mississippi and Mexican Gulf Ship Canal Company would neither be enriched, nor impoverished, as the one or the other contingency might happen; unless, perhaps, the whole city should become insolvent.

The Mississippi and Mexican Gulf Canal Company, however, have an indirect interest; they are the contractors to do the work of draining the city under the supervision of the city surveyors; they have an interest in the solvency of the party for whom they are employed to work; and as the work progresses, from month to month, they may require payment out of the funds set apart for the purpose.

In the act of 1871 the State made a contract for the benefit of the city of New Orleans and the inhabitants thereof with the Mississippi and Mexican Gulf Ship Canal Company, to build levees, cut canals and ditches necessary to effectually drain the city, requiring the work to be done under the supervision of the city surveyors, requiring New Orleans to pay for such work as it progresses, from month to month, at prices stated in the act, and requiring the city to take in hand the collection of all the drainage assessments, and, as it becomes necessary, to make new drainage assessments and collections and apply the money to the payment of the expense attending the drainage of New Orleans as contemplated in said act.

The fact that the State made the contract in behalf of the city affects the interest of New Orleans in the beneficial results contemplated by said act, no more than if the contract had been made by the city herself. The fact that under this contract New Orleans is required to apply the proceeds of the judgment, when collected, to the discharge of the debt for keeping up the drainage of the city does not impair her ownership of the judgment any more than the obligation incurred by the city to apply any and every other revenue to the purpose for which it was appropriated.

We conclude, therefore, that New Orleans has an interest in the judgment in question, and can set up legal defenses. Also, the legal defense set up is a good one, that by section thirty-one of the charter plaintiff as City Attorney was prohibited from receiving any extra compensation.

The prohibitive clause of the charter also defeats the pretensions of Waples, the intervenor. For, assuming that the judgment was entered up by him after he had ceased to be the Assistant City Attorney, he knew from said prohibitive clause of the charter that the Council could not employ an attorney to assist the City Attorney, "unless by a vote of a majority" of the members thereof. He was not thus employed, and he can not compel the city to allow him a fee in the case.

It is therefore ordered that the judgment, as to plaintiff, rejecting his demand, be affirmed with costs; and as to the intervenor, that the judgment in his favor be annulled and that his demand be rejected with costs of the intervention.

Rehearing refused.

---

MORGAN, J. *dissenting.* The Legislature in 1858 (Acts 1858, p. 114,) authorized an assessment upon real estate within the limits of the city of New Orleans, and appointed drainage commissioners to carry on the drainage thereof. In 1861 (Acts 1861, p. 43.) the Legislature prescribed the mode in which the taxes levied in conformity with the act of 1858 should be collected, and fixed a commission of ten per cent for counsel fees and costs. In 1871 (Acts, p. 75,) the Legislature intrusted the drainage of the city to the Mississippi and Mexican Gulf Ship Canal Company, a company then in existence. The Administrators of the city of New Orleans were subrogated to all the rights, powers, and facilities possessed and enjoyed by the drainage commissioners. The drainage tax when collected to be placed to the credit of the Mississippi and Mexican Ship Canal Company and held as a fund to be applied only to the purposes of drainage.

George S. Lacey was City Attorney from May, 1870, to December, 1874. The city charter under which he held his office provides that he shall hold his office for a term of two years, unless sooner removed, "and shall receive a salary to be paid by the Common Council, not to exceed six thousand dollars per annum. He shall be allowed no extra fee or compensation, nor shall any other attorney be appointed to assist him, unless by a vote of a majority of the members of the Council." Acts 1870 (extra session), p. 43. By ordinance of the tenth of May, 1870, the salary was fixed at six thousand dollars per annum.

The office of Assistant City Attorney was created by ordinance of the city of New Orleans, passed on the tenth of May, 1870. His salary was fixed at the rate of thirty-five hundred dollars per annum. It was also

provided that the office could be dispensed with at any time by a vote of the Council.

Rufus Waples was appointed Assistant City Attorney under this ordinance.

On the twenty-ninth of November, 1871, the following letter was addressed to Mr. Lacey:

> "MAYORALTY OF NEW ORLEANS,
> "New Orleans, November 29, 1871.

" George S. Lacey, Esq., City Attorney:

" The Council, in committee, have had under consideration the matter of the collection of drainage tax, and they deem it a matter of very great importance that it shall have the individual attention of one of our attorneys. They have therefore directed me to suggest to you to assign Mr. Waples to that duty, and to relieve him from the management of all new suits, and, as far as may be consistent with the city's interests, from the further prosecution of the suits in which he may now be engaged.

"(Signed)          BENJ. F. FLANDERS, Mayor."

In conformity with the above suggestion, on the same day, Mr. Lacey wrote Mr. Waples as follows:

"Rufus Waples, Esq., Assistant City Attorney:

" You are hereby assigned to the duty of collecting the drainage assessment, to the exclusion of all other professional duties, except attention to the following cases." Here follows a list of cases not necessary to enumerate.

The assessment rolls were made out according to law, and proceedings were instituted upon them. These proceedings were conducted by Waples, Assistant Attorney. They were instituted in April, 1872, in the Superior District Court of New Orleans.

On the eighth of November of the same year, " on motion of Rufus Waples, attorney for the petitioner," and on his producing due proof it was adjudged that the " assessment roll be and it is hereby approved and homologated, and this approval and homologation shall operate as and is a final judgment against the property described as assessed, in said roll, and also against the owner or owners of each property respectively, with ten per centum in addition to the amount assessed for counsel fees and costs as provided by law, with interest at the rate of six per cent per annum from the date of the assessment thereof according to law."

At the time this judgment was rendered Waples's official relations with the city had ceased. He made the motion after consultation with Mr. Shaw, one of the Administrators, and Mr. Mayo, the clerk intrusted with the making out of the assessment rolls.

Lacey vs. Waples and City of New Orleans.

Under this judgment the city has collected a number of assessments and, with them, the ten per cent in addition awarded by the judgment.

Lacey claims that this ten per cent is due to him. Waples says that one-fourth thereof belongs to him as a *quantum meruit.*

The city says they all belong to her, as Lacey and Waples were both salaried officers of the city, and can only claim the salaries attached to their respective offices.

It will be observed that the city does not object to the collection of the ten-per-cent tax. It objects simply to paying it out after it is collected. It seems to me that the city has no claim to this money. She is entitled to the amount of tax levied and collected, and no more, because the law designates to what purposes the penalty shall be appropriated.

It is clear, also, we think, that the judgment against the delinquent payers of the drainage tax is now final. The law provides that ten per cent in addition to the tax shall be paid by the contributors, and designates that this ten per cent shall be assessed for the payment of counsel fees and costs. When, therefore, the judgment is collected, the penalty is also to be collected, for the purposes above stated. To whom is this penalty to be paid? Not to the intervenor, I think, for he was directed to give his attention almost entirely to this part of the business of the office, and his salary must be considered compensation for his services while he was acting as Assistant City Attorney. He is not entitled to a *quantum meruit,* because he was not employed by the city, after his official connection had ceased, to represent her, and he was no longer Assistant Attorney when the judgment by default was confirmed. He acted, as it appears, at the instance of one of the Administrators of the city and one of the clerks in one of the departments thereof, but neither the Administrator nor the clerk had the necessary authority to employ him. He must therefore be considered as a volunteer, a service which is usually rendered without pay and without thanks.

Who had control of all suits for or against the city during the time these proceedings were carried on? I think this question is answered by the resolution of the Board of Administrators passed on the twenty-ninth of May, 1872, which is subsequent to the assignment of Waples to duty in the drainage cases. The resolution is as follows:

"*Resolved,* That the City Attorney, in the opinion of the Council, has direction and control of all suits by or against the city, *including drainage,* and all special or assistant attorneys and officers of the legal department are required to report to him and act under his direction in all cases in which he may not recuse himself."

It scarcely needed the resolution of the board to give Lacey, the City Attorney, authority to direct the Assistant City Attorneys, for they were all, necessarily, subordinate to him, but the resolution was adopted, and

if his authority in the premises could have been questioned, the resolution of the board under which he acted put the question at rest. By it direction and control of all suits in which the city was interested, including drainage, were asserted to be in him, and all the assistant city attorneys were required to report to him and act under his instructions in all cases where he was not recused.

The proceedings then, under the drainage assessments, like all other legal business of the city, were necessarily under his control and direction. Therefore, in my opinion, if any one is entitled to the ten per cent he is. The city claims that he is not entitled to it, because he was a salaried officer, and prohibited from receiving any more than the fixed amount thereof. Strictly speaking, this is not correct, for, as I read the ordinance, he could receive extra compensation upon the vote of the Council. But, for the purposes of this case, it may be assumed that ordinance was prohibitory. What would be the extent of its application? Lacey would not have been entitled to claim any extra compensation from the city. Well, he doesn't claim any extra compensation from the city. Should this judgment go in his favor, the city will not be called upon to pay him one dollar out of its revenues or property. All he can receive is the sum already collected and whatever may be collected from the drainage assessments hereafter. It is the taxpayers who will pay him, not the city, and whether they pay to him or to the city is, it may be assumed, a matter of indifference to them. Whether they could have been relieved from the penalty if they had defended the suits brought against them is another matter. But they did not, and the judgment is now final against them, payment of which, *in toto*, they can not escape.

Now, there is nothing in the ordinance creating the office or fixing the salary of the City Attorney which prohibits him from receiving compensation from other sources. And as the Legislature enacted that ten per cent on the drainage assessment should be added to the amount assessed to be due by the payers of this assessment, for counsel fees and costs, and as the Legislature intrusted the collection of these assessments to the city, the City Attorney is, I think, entitled to the provision stipulated in the act in favor of the counsel who should, by judgment, enforce their collection.

The amount in controversy is, I think, much exaggerated, for the fees depend upon the collection of taxes on land a part of which is under water and not worth the tax. But, great or small, I think the law gives it to Lacey, and that he is therefore entitled to it.

I therefore dissent.

Mr. Justice Taliaferro concurs in this opinion.