## No. 7798.

### SUCCESSION OF D. J. FLUKER.

Where the immovable property of a succession has been sold under an order of court, to pay the debts of the succession, the heirs who are the grandchildren of the decedent, and who do not allege that the property was sold for less than its value, and do not show that they have been injured by the sale, can not have the sale annulled and the property returned to their grandfather's succession on the ground that it was sold during their minority without the advice of a family meeting.

Heirs who judicially claim that certain property belongs to and must be returned to a succession are estopped from setting up that the succession is closed.

APPEAL from the Parish Court of East Feliciana. *Brame, J.*

---

Wedge & Moore for plaintiffs and appellants :

First—The succession of D. J. Fluker having been closed by the final account of the administratrix, 28 An. 446, Mrs. I. A. Fluker could not, as tutrix, cause a sale of property in which minors were interested to be made without the advice of a family meeting. 3 R. 119 ; 17 L. 500 ; 10 L. 319 ; 4 An. 523 ; 16 An. 420 ; 21 An. 712 ; 11 L. 149 ; 13 L. 433 ; 10 R. 396 ; 11 R. 67, 75 ; 2 An. 727 ; 11 A. 109 ; 1 N. S. 339 ; 2 L. 328 ; Toullier, vol. 8, p. 508 ; 3 An. 428 ; 16 An. 420.

T. B. Lyons and W. B. Kernan for defendant and appellee :

First—Even a minor whose property has been alienated without the forms of law, or in violation of law, even, cannot recover it back without restoring the advantages he may have received. Brown vs. Bouny, 30 An. 175; 21 An. 385 ; 9 L. 305 ; 13 An. 213 ; 6 N. S. 684 ; 8 N. S. 162 ; 8 L. 321 ; R. C. C. 2229.

Second—There can be no inheritance of a succession accepted with benefit of inventory while there are creditors. 20 An. 125 ; 9 An. 107 ; 11 R. 508 ; 10 R. 457 ; 17 L. 500.

Third—That beneficiary heirs cannot be put into possession without complying with article 1012 of the Civil Code. C. C. 1192, 1193.

Fourth—Where there is a formal order of the court of probates recognizing the necessity of selling the property of minors for the payment of debts of the succession the purchaser is not bound to look beyond the order. 10 R. 398 ; 11 R. 67; 2 An. 466 ; 20 An. 124 ; 19 An. 353 ; H. D. 1494, 5 ; 8 L. 322.

---

The opinion of the court was delivered by

DeBlanc, J. D. J. Fluker died in 1854. His widow administered upon his estate, and—in 1859—rendered an account of her administration. On the 19th of July of that year—this is alleged by petitioners themselves—her account " was *duly* homologated." In and by the decree of homologation she was expressly recognized as a creditor of the estate, for one hundred and sixty-two thousand seven hundred and forty-three dollars and forty cents, and discharged as administratrix.

The succession of D. J. Fluker and the community which existed between him and his wife owned lands, slaves and personal effects, which—at his death—were worth, according to the inventories then made, over two hundred thousand dollars : but, considering the number and value of the slaves, and the amount of the unpaid debts acknowledged by the administratrix, there can be no doubt that at the close of the war—if not before—said succession and community were absolutely insolvent.

From 1859, when she rendered her account and was discharged as administratrix, she—*petitioners allege*—continued, as tutrix, to *administer* her husband's succession for the benefit of their minor children, and—as such—obtained from the probate court, on the 23d of December 1868, an order commanding the sale of lands to pay the debts of the succession, the most considerable of which—that of the widow— had been seized, sold and purchased by John McKouen.

The lands referred to in said order were advertised for sale, and— after the usual delay—sold at auction and adjudicated to F. T. Noone for $12,549 70. After deducting from that price the costs due to the

clerk, the sheriff and the printer, the balance was distributed among the creditors, in accordance with a tableau presented by the tutrix and homologated by a decree rendered in open court, on the 20th of June 1869.

In 1879, Jennie E. and Benjamin K. Fluker, the grandchildren of the deceased, brought this suit to rescind and annul the order of the 23d of December 1868, the adjudications to Noone under that order, and to compel him to return, *to their ancestor's estate*, the property which he thus acquired, "to the end that it be administered for the benefit of the heirs."

Plaintiffs do not deny the existence, validity or amount of their mother's claim, the insolvency of their grandfather's succession. They do not charge—in their pleadings—nor did they attempt to prove that the lands sold to pay that claim, were sold for less than their value. They merely complain that the order under which Noone purchased was granted during their minority, without the " advice and consent of a family council."

Noone excepted to plaintiffs' action, on the ground that—though the price paid for said lands was applied to the partial satisfaction of their ancestor's debt and inured to their benefit—they did not tender back that price.

In his answer, he contends that Fluker's estate is insolvent, has no other property but that which was sold, that the sale was made and its proceeds used to pay the deceased's debt, and that his title is protected by the order of the court under which he bought.

What are we asked to do? To condemn a creditor, against whom no fraud is urged, and the principal of whose undisputed claim exceeds one hundred and sixty-two thousand dollars, to return to an insolvent debtor lands valued at less than thirteen thousand dollars, and which the creditor acquired at a public sale and for a price equal to their appraisement. That demand is neither just, nor reasonable.

Is it—as contended—sustained by our laws and jurisprudence?

We have been referred, by plaintiffs' counsel, to decisions in which it was held that, when heirs are *put in possession* of a succession, that fact terminates the succession, and that—thereafter—the creditor's action must be brought against them, as the owners of their ancestor's property. This is clear ; but those authorities do not sustain the position taken by plaintiffs, either in their pleadings or printed argument. They do not claim for themselves—but for their *grandfather's succession*—the lands bought by defendant, and specially ask that said lands be returned to *that succession,* and administered as much for his—defendant's—own benefit—if he is a creditor—as for that of others.

When plaintiffs speak of their ancestor's succession as one which still

owns property, and to which property must be returned, do they not acknowledge its existence, and can we—disregarding that acknowledgment—hold that said succession was closed and has ceased to exist since 1869? The title of their suit, which was filed, tried and determined in the parish court, is "Succession of D. J. Fluker vs. T. F. Noone"—that of the judgment simply "Succession of D. J. Fluker." These indications leave no doubt that their pleadings were prepared with a view of avoiding the necessity to restitute the price, and for the purpose of protecting their action against the very exception which was opposed to it; but they, nevertheless, constitute the judicial assertion that, when the lands were adjudicated to Noone, the Fluker's succession was not closed.

Under these circumstances, were the advice and consent of a family council indispensable to the validity of a sale made to pay the acknowledged debt of the succession; and—if so—did plaintiffs prove that they have been injured by said sale, or that they might derive the least advantage from its cancellation?

In "Poultney's Heirs vs. Cecil, Executor," this court said: "That the rules which apply to the sale of minors' property as such, when the title is fully vested in them, are not strictly applicable to a case where the rights of the minors are contingent and residuary, subject to the undoubted claims of creditors, and who—in this instance—appear only as beneficiary heirs, suing for property already alienated for the payment of debts," which was, and—here—would not cease to be a pledge in favor of the creditors.

8 L. R. 425; 10 R. 459.

In "Davidson vs. Davidson," it was held that, "as the property had been sold by order of court to pay debts, after the homologation of the tableau, it was not necessary to provoke the appointment of a family meeting and obtain their action, in order to make a valid sale of the succession property."

28 A. 270; 10 R. 398; 11 L. 149; 13 L. 431.

Be all this as it may: plaintiffs have not even alleged, much less established that they have been, in any way, injured by the sale which they attack, nor have they attempted to show that if it were canceled and the property resold, it would bring a higher price than before. Were their demand allowed, what would be the inevitable result? The property itself, or every cent of its proceeds, would go to the creditor and leave him a creditor of at least the succession, for a considerable balance. "Why, then, as said by this court, should bona fide purchasers, who have advanced their money upon the faith of the proceedings of a court of justice, who have expended large amounts in improvements, be turned out of possession on account of mere informalities, at the instance of a party who shows no injury, and exhibits no equitable ground for relief? Such

a course would be inconsistent with repeated decisions which, of late years, we have felt it to be our duty to make."

3 A. 668 ; 5 A. 260 ; 6 A. 61, 585.

" We are aware that those decisions are not in harmony with the jurisprudence which, for a time, prevailed in the State ; but they are the result of careful reflection. We believe them to be a return to sound and equitable principles, which we think had been lost sight of in a too rigorous regard for form. We found a sanction for them, not merely in natural equity, but in the jurisprudence of other enlightened countries, and we saw that the titles of many honest citizens had been rendered insecure, public confidence shaken, and the public prosperity affected by the temporary adoption of a contrary doctrine."

29 A. 129 ; 8 A. 504 ; 30 A. 175.

To review the entire list of authorities to which we have been referred by the parties' counsel, we would have to write a volume. We have attentively read and considered every one of them, and they have not removed our conviction that plaintiffs' demand is not sustained by either law or equity.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.