MAUGHT v. CASSARD

———

(April 9, 1928. Opinion and Decree.)
(July 7, 1928. Rehearing Refused.)
(October 3, 1928. Writ of Certiorari and Review denied by Supreme Court.)

———

J. C. McGee, of New Orleans, attorney for plaintiff, appellant.

Miller, Miller and Fletchenger, of New Orleans, attorneys for defendant, appellee.

JONES, J. This suit, which is on a promissory note given to Mrs. Cecile Cassard, wife of John A. Maught, by her brother, Ernest J. Cassard, was filed on May 1, 1925. The note offered in evidence is dated October 25, 1901, and made payable on demand. As the defendant, Ernest J. Cassard, was an absentee at the filing of this suit, plaintiff prayed for a curator ad hoc and for the attachment of certain money of defendant in the possession of the American Bank & Trust Co. The court appointed the curator ad hoc and issued the attachment prayed for.

To the above petition the curator ad hoc pleaded the prescription of five years as a bar to the demand.

Before trial, Mrs. Adele DeGruy, wife of the absentee defendant, and Mrs. Lillian Claire Cassard, his daughter, the wife of Lucian J. Moret, filed petition of intervention, also pleading prescription as a bar to the main demand.

The plea of prescription was upheld by judgment rendered on June 1, 1925, and plaintiff's suit was dismissed at her cost. From this judgment plaintiff appealed.

Subsequent thereto intervenors were allowed to have the property attached released from seizure upon their furnishing bond.

It is admitted by both sides that the defendant has not been heard of since the year 1904, and that his whereabouts are unknown.

The plaintiff, having identified the note, stated that the consideration therefor was six checks signed by her to the order of defendant, one bearing the same date as the note in question, and the others bearing dates subsequent thereto. She further stated that she had last seen her brother at the St. Louis Exposition in St. Louis, Mo., in the year 1904, and that she did not know where he was thereafter.

Upon cross-examination by the curator ad hoc she admitted that she had received a legacy of twenty-five hundred dollars from the succession of her uncle, Augustin Cassard, in 1911, and thought that her brother was also entitled to money from this succession.

The defense offered in evidence record in the succession of the above mentioned Augustin Cassard, particularly the provisional account filed therein on December 9, 1910, showing the listing of the defendant, Ernest J. Cassard, as the recipient of a money legacy of twenty-five hundred dollars, less one hundred twenty-five dollars inheritance tax, or twenty-three hundred seventy-five dollars, and also the joint petition of the widow, Mrs. A. J. Cassard, and plaintiff and defendant and the other nephews and nieces of the deceased, all legatees under the will.

The judgment to this joint petition of widow and legatees was signed April 24, 1911, and the defendant, Ernest J. Cassard, was recognized as owner along with other co-heirs of two undivided thirds of the property situated at the corner of Canal and Carondelet Streets in this city, which property was for many years popularly known as the "The Louisiana Club" property.

The documents above offered show that plaintiff and defendant, brother and sister, each received a cash legacy of twenty-five hundred dollars from this succession, and that each was recognized as owner by the same judgment of an equal share in the above mentioned Louisiana Club property, namely, 3/96 thereof. This judgment was recorded in the Conveyance Office in Book 241, folio 211.

Defendant offered in evidence the record in the separation suit of Mrs. Adele De Gruy, wife of Ernest J. Cassard, vs. Ernest J. Cassard, her husband, No. 97,160 on the docket of the Civil District Court.

This record shows that the absentee's wife sued him for a separation on the ground of abandonment on May 23, 1911. In her petition she alleged as follows: That his uncle, Augustin J. Cassard, had died recently, leaving a last will in which her husband was made legatee for twenty-five hundred dollars, cash, and a large interest in a piece of real estate, subject to the usufruct for life of the widow; that her husband when last heard of was in Ceiba, Honduras; that the net amount of the legacy, twenty-one hundred ninety-four and 88-100 dollars had been paid and was then on deposit in the registry of the Court in her husband's name.

She prayed that a curator be appointed to represent the absent husband and that he and the Clerk of Court be cited to show cause why she shouldn't be paid alimony pendente lite at the rate of two hundred dollars per month and attorney's fees out of the deposit.

To this petition the curator excepted as follows:

(1) Petition disclosed no cause of action;

(2) Alimony could not be legally granted out of defendant's separate property on a substituted service;

(3) That attorney's fees were not elements of alimony;

(4) That defendant's property could not be seized legally in such proceedings.

On June 16th, the exceptions were overruled by Judge George H. Theard of Division "E," Civil District Court, and judgment was given, condemning defendant to pay alimony at the rate of fifty dollars per month to support his wife and minor child.

Under this judgment seizures were regularly issued every month for fifty dollars up to January 2, 1913, when the fund was exhausted. Each notice of seizure was served on Clerk of Court and is found in succession record.

Defendant also offered in evidence the rule of Newell Tilton, et al. contained in the succession proceedings. The record shows that Ernest J. Cassard, through a curator ad hoc was ordered to show cause why the Clerk of Court should not be ordered to pay out of the above described deposit in his hands belonging to defendant in rule the sum of twelve hundred thirty-nine dollars, which amount had been seized in the hands of the Clerk as balance due under a judgment in the case of Goldsmith, tutrix, vs. Ernest Cassard, No. 67,-477, Division "C," Civil District Court.

The rule was tried and made absolute on July 12, 1911, by Judge E. K. Skinner of Division "C." After this Tilton judgment was paid the balance was seized under the alimony judgment.

The defense also offered in evidence record No. 154,706 of the Civil District Court, in the suit of Mrs. Jeanne Varney Carbonell, et al. vs. Ernest J. Cassard, alleging that they were the owners in indivision with the said Ernest J. Cassard, of the property previously referred to as the Louisiana Club property, and praying for a partition thereof. This suit was filed October 14, 1924, and among the petitioners was the present plaintiff, Mrs. Cecile Cassard, wife of John A. Maught.

Judgment was rendered in this partition suit on April 28, 1924, the Louisiana Club property was ordered sold and proceeds

referred to a notary for distribution. On April 13, 1925, the net portion belonging to defendant herein, fifteen thousand, three hundred seventy-five and 39-100 dollars, was deposited in a bank here and pass book was deposited in vaults of Civil District Court.

This record includes documents showing the sale by Etienne A. Cassard, one of the heirs recognized as part owner, of the Louisiana Club property by the judgment of 1911, of his share therein to David Pokorny, September 1, 1914.

The prescription pleaded is that set out in Art. 3540 of the Revised Civil Code, which reads as follows:

"Action * * * on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from day when engagements were made payable."

Plaintiff argues ably that this prescription does not apply because the maxim "contra non valentem agere, praescriptio non currit" is still recognized in this State. Defendant never had any legally seizable property in this State until the judgment in the partition suit was rendered.

It is admitted by all parties that the legacy of the real estate to the nephews and nieces under the will of A. J. Cassard was a conjoint legacy and would have passed to the co-legatees, if, as a matter of fact, defendant died before his uncle.

In his brief, plaintiff sets forth his position on this point, as follows:

"The judgment of putting in possession was in the usual ex parte form. An attorney for absent heirs was a party to it. But there is no law which permits an attorney for absent heirs to accept for an absentee. A succession or a legacy can be accepted only by an heir or legatee who is present, R. C. C. 976, 977, 988, 993, or represented by an agent or attorney in fact with special and express power, R. C. C. 2994, 2995, 2996. In any event acceptance can only spring from the expressed declaration, or the tacit acceptance resulting from conduct, of an heir present or represented."

But, in the nature of things, if a succession is vacant, or if an heir is unknown, an inheritance or a legacy cannot be accepted formally or tacitly, because of the lack of that expression of intention which is, in every case, the basis of the acceptance of succession, R. C. C. Art. 990, and of legacies, R. C. C., Art. 976.

On the contrary, the law is that, if a succession devolves on a person whose existence is at that time unknown, the succession does not go to the legatee, or heir, but devolves, ex necessitate, on his co-legatees or on those who would take if the legatee had never existed.

R. C. C. Article 77:

"In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on those who would have had a concurrent right with him to the estate, or on those on whom the inheritance should have devolved if such person had not existed."

Surely, the Codal Articles apply, without any doubt, to the legacy thus left to Ernest Cassard, absentee, whose existence is unknown.

If Cassard was dead, then the legacy lapsed, and this removed him and his heirs from all connection with it. If, although he was alive, yet his whereabouts and his very existence were unknown, no one could accept the inheritance for him, and the law has wisely provided that, under such circumstances, the inheritance or legacy shall not devolve on the absentee, but shall to those who would take

with him, or to those would take if he had never lived.

In the present case, therefore, this conjoint legacy made to Cassard and the other nephews and nieces could not go to Cassard, even if we presume that he was alive when his uncle died. It devolved on his co-legatees, and certainly his creditors could not validly press their claims against any property to which he, or his estate, did not have legal title. As already stated, if he was dead when this succession was opened, then manifestly the legacy never belonged to him, having lapsed by his death before the testator.

Clearly, therefore, in either contingency, the plaintiff in the present suit could not proceed against either the cash portion or the legacy or the interest in the real estate as belonging to the absentee, for the very good reason that the legacy did not belong to the absentee, or, at least, that no proper showing could be made to show definitely that the legacy had vested absolutely, by legal title, in the designated beneficiary, the absentee.

Reduced to their essentials, we have in the present case the acceptance by an attorney for absent heirs of a legacy made to an absentee whose existence is unknown, and we have a solemn judgment of court sending the legatee into possession as owner. The attorney for absent heirs could not represent a dead man. The dead man could not accept the legacy. The legacy has lapsed, if the legatee was pre-deceased. If we suppose that the legatee was really alive, yet it is a fact that there was no proof of his existence, which brings the case squarely within the terms of Article 77 R. C. C., allocating the legacy under such circumstances to his co-legatees or to those who would take in his default.

Evidently, the consent judgment, which ruthlessly (if kindly and benevolently) operated to place this legacy in the name of this absentee so as to hold it for his possible eventual re-appearance, accomplished the very thing which the law prohibited.

It is familiar law, that a creditor must warrant the title to the property which he seizes as belonging to the debtor, and, surely, where the alleged title of the debtor is based on a null judgment entered by consent in contravention of a prohibitory law, it cannot be said that the creditor should be charged with laches for failing to make himself a party to such void proceedings, or for refusing to act under them.

C. P., 711:

"However, if the purchaser has been evicted from the thing adjudged to him, on the ground that it belongs to another person than the party in whose hands it was taken, he shall, in that case, have his recourse for reimbursement against the seized debtor and the seizing creditor; * * * ."

We do not find it necessary to decide the disputed question as to whether the doctrine "contra non valentem, etc." is still recognized in this State, for in our view, even if it is recognized in this State it ceased to have application in this suit when the judgment sending the widow and legatees into possession on their joint petition was signed on April 24, 1911. Had seizure then been made of the interest in the real estate belonging to defendant, the only possible persons who could have objected were the co-legatees to whom defendant's portion of the conjoint legacy would have passed and they were forever silenced, because they were estopped from raising any such point.

It is thus seen that defendant's right to the money legacy of twenty-five hundred dollars had been twice judicially recognized.

As plaintiff knew of her brother's legacy and as she had taken part in securing for him his interest in the real estate, she could have filed her suit in 1910 or 1911.

See C. C. Art. 2291.

In Walker vs. Walker, 37 La. Ann. 107, the Supreme Court said:

"A party to a suit is not permitted to judicially allege a state of facts so contrary to and inconsistent with those set up in a former suit between the same parties, that if the allegations in the one suit be true those in the other must necessarily be false."

See also Gridley vs. Conner, 4 La. Ann. 416; Denton vs. Erwin, 5 La. Ann. 18; Devall vs. Watterston, 18 La. Ann. 136; Binder vs. Belknap, 23 La. Ann. 764; Webster vs. Smith, 6 La. Ann. 719; McQueen vs. Sandel, 15 La. Ann. 140; Lacey vs. Waples, 28 La. Ann. 158; Compton vs. Sandford, 30 La. Ann. 838; Suc. of Fluker, 32 La. Ann. 292; and Gaudet vs. Gauthreaux, 40 La. Ann. 189, 3 So. 647, where the Supreme Court said:

"It is a well settled rule in the administration of justice that a party will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding. The only means of courts to protect the integrity of judicial proceedings are the sanctity which the law throws around them."

Lowenstein vs. Glass, 48 La. Ann. 1422, 20 So. 890; In re Immanual Church, 113 La. 911, 37 So. 873; Yrle vs. Hezean, 9 Orleans App. 33; Savings Homestead Assn. vs. Chase, Tessier Digest, Orleans App. 129; Gaude vs. Gauthreaux, 40 La. Ann. 186, 3 So. 645; Mulling vs. Jones, Tessier Orl. App. Dig. 129; Mohawk Oil Co. vs. Layne,

147 La. 895, 86 So. 322; Caldwell vs. Nelson Morris & Co., 120 La. 881, 45 So. 927, 15 L. R. A. (N. S.) 423, 124 Am. St. Rep. 446, 14 Ann. Cas. 1043; Farley vs. Frost Johnson Lbr. Co., 133 La. 497, 63 So. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717; Maddox vs. Robert, 158 La. 394, 104 So. 183.

It is now too late for plaintiff to declare that defendant had no property in Louisiana after she had judicially averred to the contrary and others have acted on this averment.

For above reasons the judgment is affirmed.